Appellant. Ms. Rowland for the Appellant. Ms. Alanis for the Appellant. Good morning. Yes, no, I was about to say, I don't know what the problem is, but you're awfully quiet. Keep your voice up, please. No, we can hear you, but it's very quiet. This is a new experiment, as you know. Let me just ask you, can people sitting out there hear? See, that's the problem. I mean, I know you have a lot of really interesting things to say, so we want people to hear. Okay, is this better for everyone? But not perfect? Well, I hope I say something really profound now. I'm not sure there's any real dispute about the law here. We have the benefit of Mendenhall, Chesternut, Drayton, and Brennan, so we know that the question is whether the police conduct would have made a reasonable, innocent person think that their liberty had been restrained in some way. And I focus on that in some way because that is the language of the Supreme Court. So whether they were not free to leave or because they were not free to ignore the police. The government seems to say that the test is a little different than what you articulate in your briefs in that the test is whether Mr. Delaney would have been impeded from leaving by foot, for instance. And the test isn't just, we shouldn't just look at whether he was impeded from leaving by vehicle. What's your response to that? The test isn't, there isn't one test for walking and one test for driving. The test is whether a reasonable, innocent person would feel that their liberty was restrained in some way. So, you know, here because the circumstances are that he was in a car, operating a car, you know, we think the test is whether he could have driven away. And whether or not he could have driven away, the act of parking in such a way that he would have hit the police car if he had pulled forward, he would have had several, make several tight maneuvers to get out of the lot, would communicate to any reasonable person that their liberty was being restrained. And so whether he could have gotten out of the car and walked away, which of course we think is completely absurd that the police would have allowed that, his liberty was restrained by blocking a car. If you see the police block your car, you don't think you can drive away, you don't think you can walk away, you think your liberty has been restrained. Well, in Florida v. Bostick, the evidence was that the police officer was partially blocking the person's seat and ability to get up from the bus, I believe it was there. Right. But the court held that that was not a seizure because they could have made their way out and it wasn't, you know, they weren't reasonably restrained at that point, right? Well, my recollection of Bostick is that the aisles were not blocked so that the person, so people could move in the aisles. I think the officer had been kind of careful not to block. Well, there was language that said one officer stood in front of the respondent's seat partially blocking the narrow aisle through which respondent would have been required to pass to reach the exit of the bus. Okay. Okay, but the exits were not blocked. Anyone could have gotten off the bus. How important is the takedown light to your theory? I think it's an added fact, but the most significant fact is that they parked in such a way that Mr. Delaney would have hit their car if he pulled straight forward. And to get out, he would have had to make several tight maneuvers. He also would have hit the police officer who walked in front of his car to get around to the driver's side of his Jeep, which, of course... Yes, that's true. That occurred once. That doesn't help you. If your theory is that the seizure occurred when the officers pulled in and blocked the car. Our theory is that the seizure occurred when they stopped their car in a way that blocked his car. We also argue in the alternative that the seizure occurred when they approached his car on both sides and began talking to them, and in the alternative, as the district court found, when the officer opened his car door. I'm curious, Ms. Rowland, how you're separating out these different states, because having watched the video, it seems like they park, get out of the car, and really hustle toward Mr. Delaney's car. And that would make a difference, I think, to whether a reasonable person in Mr. Delaney's position would have seen that as a show of authority or would have felt free to leave. The fact of the speed with which they exit the car and head toward his parked car would seem to me to factor into whether he felt free to leave, even before they get very far. Yes, I think that that's true. And now that we have a body-worn camera that's available to the court, you can actually splice these things very thinly. Excuse me, but once you go beyond, as I read your brief or your theory of the case, it seemed to me it was important to your theory that the seizure occurred when the officers pulled in with their light on behind the defendant's car or in front of it. Because the later we go into the action, even when the police get out, you've got a finding from the district court that that's when they saw the sunroof was open. So your reasonable suspicion case gets harder, right? Yes, although I would like to address those facts. No, but isn't that right? I understood you were emphasizing that the seizure occurred when the police car blocked, because that's where your best case is for no reasonable suspicion. At that moment, all they knew was shots had come from somewhere, somewhere close by, and they found some people in an alley. So yes, that is where we locate the show of authority, when they block the car and they turn on their takedown lights. I think following up on Judge Pillard's comment, I think that it is significant. This all happens so quickly. Within nine seconds, they're opening the car door. But it is significant that they pull in. When you watch the video, you'll hear Officer Buchholz say, yes, that's it. Or, well, he says, yep, I think. Yep, that's it, or yep, that's him. It's a little hard to tell. They jump out of the car, and they make a beeline to the Jeep. So if the show of authority isn't located at that moment when they block his car and turn on those lights, then there are significant facts subsequent to that that show that there was a seizure a few seconds later. I think it is significant that they turned on the lights. The most significant fact, of course, is that they blocked his car. But no reasonable person whose car has been blocked and is under the glare of those high-intensity lights would think that they were not the subject of this stop, that they were just free to drive away, walk away, that their liberty was not restrained. I do think it's a case in which the order and the timing of events matters, particularly with regard to the kissing and the apology. Yes? Let me just ask you, the question is whether a reasonable person in the defendant's position would have felt free to leave. Under your first theory, which is that the location of the police cruiser was the seizure, what is the show of authority, and what is the evidence of Mr. Delaney's submission to authority? The show of authority is blocking his car and putting him under the spotlight, and the submission is when he does what they implicitly commanded, which is, don't leave, stay put. So by doing nothing, by not getting out of his car and walking away, by not trying to maneuver out, he's submitted to their authority. I think that you have to look at what the show of authority is telling a person. And in this case, the show of authority was not telling him, you know, don't kiss, although I have to say I have some comments about the order of the kissing and why that's not significant. I'm confused about your case now. Okay. I thought, if your theory is that the show of authority occurred when they pulled in with their light on and blocked the car, right? Yes. Then what difference does it make what happened later? It only matters because I'm covering all bases. If the court disagrees with me. So this is an alternative argument. Absolutely. I'm sorry. Okay. But I'm actually under your first theory. Yes. What is the evidence that Mr. Delaney was submitting to this, what you've characterized as a show of authority, by parking the car and shining the light? The submission to that show of authority, taken in isolation. The show of authority was, don't leave, and the submission was not leaving. A person doesn't have to do something active to submit, like as he did later putting his hands up. A person can simply not leave. Just like in Brindlin when they talk about a person who's sitting and who's then seized submits by continuing to sit, not getting up. What about, you said you had some comments on the kissing, the notion that if he really felt that this was a police stop aimed at him, that as soon as the car parked he wouldn't have been, why wasn't, why doesn't the law require that he would gesture in some way, submission? Well, I have two answers to that. The first is that Officer Willis testified that the kissing began as they drove into the lot. So the kissing began before the show of authority. And the second point is that, well, I have three points. The second is that they were not commanded, don't kiss. They were commanded, don't move, implicitly. So the kissing was inconsistent with submission. And I'm trying to remember the third. Oh, well, just the obvious that kissing is not a suspicious act. It's not like shoving something down your pants or hiding something under the seat, and it's especially not a suspicious act on New Year's Eve. Okay. Thank you. Thank you for your government. Don't forget to hand in your headset there. Good morning, and may it please the Court. Dan Lenners for the United States. If I might start with Judge Pillard's question about the officers hustling quickly to the car, I don't understand the defendants to have made that argument below or the district court to have made any factual findings on it. And I think that the actual sequence of events belies any immediate beeline toward the defendant's car. Officer Bookholt, upon leaving the police cruiser, didn't go directly to the car. He went to the back of the alley with his flashlight to look for other people. And Officer Willis testified that as he approached the car, he made casual conversation and asked the occupants whether they had heard gunshots. And so that's, I think, inconsistent with the finding that something about the police's exit from their vehicle would have been an additional show of authority sufficient to establish a seizure. And even if it had, upon exiting the car, Officer Willis saw the open sunroof and open passenger side window from which the defendant could have been shooting a gun. But why didn't, why didn't, would you address the antecedent moment when the police pull in immediately in front of the car with their takedown light on? Why isn't that, at that moment, the show of authority? It's not a show of authority. I realize you didn't take a position in that in your brief, but that's their argument. Yes, Your Honor. We don't believe it's a show of authority sufficient to tell a person that they were not free to disregard the police and go about their business. All the officers did was park their car in what the district court found to be a natural parking position. They did not block the defendant's car. They were not immediately in front of it. They were more than three feet away. What do you mean they weren't immediately in front of it? If they were going to, the court found that they were going to have to do several back and forth turns around it, then they're in front of it. If they're not in front of it, then they can pull right out and leave. But I think there is an area in between those two things, Your Honor. The defendant's car could have pulled forward, reversed, and then pulled forward again around the officer's vehicle and out of the parking lot. What about the argument they make that any action like that would have itself been suspicious behavior? And you didn't – the government didn't respond to that in your brief. I don't understand the legal question of whether a person – whether the police's actions would have caused a reasonable person not to feel as though they were at liberty to go about their business to then play out the following scenario and imagine what the officers could or could not choose to do. In fact, the test presupposes a reasonable, innocent person. And so a reasonable, innocent person would believe that if the officers left them free to go about their business, either by continuing kissing or getting out and walking away. This is an earlier point. I'm asking you about the earlier point. I understand. The officers pulled in just a few feet in front of the car with their takedown light on, correct? Yes, Your Honor. And those are the only facts. There's no – Right. You could still have a strong case with only two facts. The number isn't important. It's the facts. I understand. So let me ask you, what about the takedown light? Courts have routinely found that the – It's called a takedown light. What does that mean, takedown light? And the defendants cite a case, I think it's a Seventh Circuit case, which says that takedown lights are intended to blind and disorient the occupants. Your Honor, there was no testimony in this case that this light blinded or disoriented the occupants. The officers used a bright white light to illuminate a darkened alley. I think courts have routinely found, and I think the First Circuit pointed out, that were courts to find that that caused an unconstitutional seizure, that it would put officers in danger because officers would feel as though they could not illuminate darkened places. But here's, I guess, the point, though. If you're going to use a light, which your government counsel below called a floodlight, and you're going to shine it in the face of someone in their car, and then you're going to park your car such that they have to do some pretty fancy maneuvering to get around your car with a floodlight trained in their eyes, wouldn't that cause a reasonable person to feel like it's not really appropriate for them to try to leave and that the government doesn't really, that these police officers really don't intend for them to leave? I have two responses to that, Your Honor. One, I don't think it's a fair characterization to call it a floodlight trained in their eyes. It was not a spotlight. The court found it to be a spotlight. The district court called it a spotlight three or four times. If you watch the body-worn camera, Your Honor, it is not a spotlight. It is a bar of white lights that are used to illuminate a darkened place. It illuminated the entire alley. So the district court calling it a spotlight was clearly erroneous? I don't believe the district court made a factual finding that this was a spotlight as opposed to a general illuminating of the alley. I'm not sure which way that cuts because one of my questions was, is this light, do we have any information in the record about whether this light is directional? Can it be swiveled around, or is it more ambient? I don't know if there is information in the record specific. It is a bar of lights across the top of the police car below the colored lights. Right. The bar of lights illuminates in front of the vehicle. As you can see on the body-worn camera, it is not a spotlight focused on the defendant's car. It is generally illuminating the parking lot as a whole. It seems like the defendant's case implicitly is that in order not to seize this defendant, the cruiser would have had to pull into one of the many spaces that was empty on the near side of the Jeep. And one question I had as a factual matter was whether that would have made the light ineffective in illuminating the car area. But it sounds like you're saying no, that the light would have remained effective in adequately illuminating the area. The defendant's argument below was that the officer should have pulled past the defendant's car into the back of the parking lot. And the district court rejected that argument because it would have required the officers to walk back into gunshots. I didn't read that to be the defendant's argument, but I did. You're right, the district court talked about saying she didn't think they had to pull past. But when you see the second video in the record, it just raised the question with all those empty spaces, if someone not wanting to, if a police officer did not want to execute a show of force, there were places to park. There were places to pull in, Your Honor, although in response to your question and Judge Wilkins' question earlier, my second response is the district court found this to be a natural parking spot. The officers had to pull in far enough not to block the parking lot driveway. The district court found that had they pulled further, they would have put themselves in danger. And they did not block the car in. There are very few cases out there in which merely by the placement of their car alone have the police had a sufficient show of authority. Why does that make any difference, what the alternatives were? Seriously. The question is whether the actions of the officers at that moment was a seizure. And explain to me why it makes any difference what the alternatives were to the officers. Maybe the only option they really had was something that would have been a seizure. I think a reasonable innocent person test, a reasonable innocent person would understand these other options. They would see that the officers had not blocked the parking lot driveway. It would seem that the officers had not driven past and that the officers had parked in a natural parking position. They would see that they didn't park in a parking space. And if they parked in a parking space by definition, it wouldn't have even partially blocked their position. That's true. Wouldn't that signal even more so the fact that the officers chose not to use the parking space? I don't think so, Your Honor. I think the fact that they chose not to park directly in front of the defendant's car, leaving him a way of driving away. And that's all that occurred. There's no use of their police lights. There's no command or even speaking to the defendant. There's no show of weapons. There's not even approach of the car. I'm going to ask you a very important question that I want you to think carefully before you answer. In U.S. v. Brown, there's a lot of discussion about how dangerous traffic stops are for police and how courts should take into account that danger when judging the reasonableness of officers' actions. Should we take into account the fear, the reasonable fear that an innocent person would have when they are in the middle of a police encounter, when we determine whether they would feel like they have been seized or whether they have the ability to avoid the encounter or leave? I think the answer is no, Your Honor. And for that answer, I rely on one of the First Circuit cases that we cited in our brief, whose name I don't have at my fingertips. But the court there discussed the inherent coercion in any police citizen encounter and discussed the fact that notwithstanding that inherent coercion, that was not a factor taken into consideration during the question whether a person has been seized because you presuppose a reasonable, innocent person. I think I'm saying something slightly different than what your answer conveys. If a police car partially blocks the vehicle of a reasonable, innocent person and there are lights, very bright lights that have been turned on that weren't turned off, which make it difficult and perhaps even dangerous for the person to try to maneuver around the police vehicle and the person certainly doesn't want to ram the police vehicle unintentionally or hit a pedestrian or a police officer getting out who's gotten out of the car unintentionally. And the person certainly doesn't want to do anything that would cause them to be shot by the police. Aren't all those things that a reasonable, innocent person should consider at that moment? I don't know that there's any support in the case law for imputing those concerns to a reasonable, innocent person. I'm not asking you for support in the case law. I'm asking you, was it reasonable for an innocent person to be thinking about those things at that moment in this encounter? The only thing I can go back to, Your Honors, are the cases that I've read and the First Circuit's suggestion that this inherent element of coercion is not something that courts should consider. We don't decide cases, you know, based on whether we can find, you know, precedent that has all the same facts. I understand. We have to write on a clean slate or a partially filled slate. I think this Court would be breaking new ground that neither the Supreme Court nor other circuits have yet broken. If it were to impute to the defendant in this case a feeling that he had been seized because he was concerned that if he got out of the car, he would be shot, or he was concerned that if he pulled forward, he would hit an officer who had not yet exited the car. And again, Your Honor, the temporal question is important because once the officers exited the car, they knew more toward reasonable, articulable suspicion than they did before they had exited the car. So I don't think the Court needs to break new ground in order to decide this case. One last question. What's your best argument for reasonable, articulable suspicion at the moment the police pulled in and stopped? I think it's the four factors that the district court identified, Your Honor. It's the fact that the officers heard nearby gunshots, that they had located them within a block or so based on their training and experience, that they drove to the location where they believed the gunshots had come from, and that the defendant and his girlfriend were the first and only people they saw in that one minute, that when they approached the defendant, that they saw no other people either in the parking lot or on the way, and that before they got out of the car, in response to their presence, the district court or the defendant and his girlfriend engaged in a kiss. Well, but that's at a later moment than I was asking about because... The kissing occurred before the officers stopped the car. So the record reflects that when they were driving in, they saw the kissing? Yes, Your Honor. The district court found that the kissing led to reasonable, articulable suspicion at the moment the officers parked the car. But she just found that it was strange. She didn't find that it was deceptive. She found that it was highly unusual, very strange, and bizarre. But not deceptive or not designed to mislead the police. She didn't make that finding. She didn't expressly find that it wasn't designed to mislead the police, but I think the takeaway from it being very strange, very unusual, and bizarre is that it could have heightened an officer's suspicions because it was designed to throw them, throw off their suspicions. But she didn't, the district court didn't find that. But she didn't reject it either. And I think it's a natural, it flows naturally from her finding that it was highly unusual and that it added to the reasonable, articulable suspicion analysis was that it wasn't unusual in an innocent way that it was part of the totality of the circumstances. Okay. Thank you. Thank you, Your Honor. Ms. Rowland, you are out of time, but you can take a minute. Thank you. Ms. Rowland, I think that the case that Mr. Leonard was talking about from the first circuit was the Tengway case, I'm guessing, a recent case, in which the Court said that if precedent precludes us from treating this type of conduct as a command, perhaps because to rule otherwise would be to prevent officers from safely visiting parked vehicles at night. And I don't know if that's correct. That's certainly not binding on us, but I'd be interested to know your response. I mean, these are officers reacting in an area where apparently a lot of people are shooting off guns. It's night, and they come into this somewhat confined area, and the law requires that we have a lot of deference to officers' judgments in the moment and on the ground. Of course. But here they really had a lack of evidence, but that's not really your question. Your question is about can't they approach parked cars. And, of course, officers can approach parked cars. I think what they can't do is signal that we're not merely making inquiries like someone might at an airport or anywhere else, but we are blocking you from driving and we are targeting you with our lights. And that, I think the lights also helps distinguish this case from Bostick, which Judge Wilkins was inquiring about. I think Mr. Delaney would have felt far more targeted than the passengers on the bus, even the passenger who was at that moment being questioned in Bostick, because not he was targeted by those lights and because officers restricting movements of a car, for example, when they pull you over for a traffic violation or some other reason, that is the typical way in which we all recognize that we are not free to leave when officers impede our car's movement in some way. So I think that that distinguishes this case from Bostick. Let me ask you, and I realize this is not this case, and as Judge Tatel's earlier question suggested, it may not be even part of the inquiry whether they have another alternative, but assume the same information about gunshots and they're trying to trace them to a location. If this parking area had been full and so there was only the driving in lane for the police to access, and if Mr. Delaney's car were the last in the row, by hypothesis I think your position is that the officers would have had to park out on the street and go in on foot. If they pulled in, thought they saw someone in the car who they wanted to ask questions about, they would have had to back their car out to the curb and go in on foot. At that moment, they didn't have reasonable suspicion, and so they needed to do whatever they needed to do not to block his car. They could have pulled past him, or they could have done what they did at the first alley, which is stop on the street and walk into the alley, which reminds me of another point. The court can see in the video that there actually are other people out on the street because at the mouth of the first alley, you see a car with its headlights on. You never made an argument that any of the district court's factual findings were clearly erroneous, did you? No, we didn't, but we did argue below and we did argue on appeal that there was no evidence and that it was meaningless whether there were other people walking about on the street because we don't know where the shots came from, whether they were from a car, a house, or some other location. Okay, thank you. Case is submitted.
judges: Tatel, Pillard, Wilkins